1,BROWN, C.J.,
Defendant, Keith Lynn Barnes, was convicted of possession of cocaine and sentenced as a habitual offender to eight years at hard labor without benefit of probation, parole or suspension of sentence. Defendant now appeals from that conviction. Finding no error, however, we affirm.

Facts

On June 29, 2000, Detective Triche Pass-man, assigned to the Monroe Police Department Jump Team (a narcotics interdiction unit), received a telephone call from a confidential informant (“Cl”). The Cl said that defendant, a convicted drug felon, wanted him to find a buyer for some cocaine defendant was planning to purchase and resell. Det. Passman told the Cl to arrange for defendant to sell the drugs to an undercover officer. The Cl picked defendant up in a car belonging to the Cl’s mother and drove defendant to a house where defendant picked up a bag of drugs from defendant’s cousin. The Cl witnessed the exchange in the front yard of the residence. Detective Passman called the Cl and, speaking in code, learned that defendant had the drugs and was riding in the front passenger’s seat of the vehicle, a maroon four-door Pontiac Grand Am, and they were heading toward South Eighth Street.
*77 Det. Passman notified the other members of the narcotics interdiction team. Two of the officers spotted a vehicle matching the description given by Det. Passman and pulled the car over. Both the Cl and defendant were ordered to get out of the vehicle. Defendant was patted down and no drugs were found on his person. Detective Passman and other members of the team arrived at the scene and the Cl gave consent to search the vehicle. A ^plastic bag containing what was later confirmed to be crack cocaine was found on the rear floorboard of the car. The Cl identified it as the drugs that defendant had obtained. Defendant was arrested.
The contraband weighed 23.5 grams and defendant was charged with possession of cocaine with intent to distribute. A jury found defendant guilty of possession of cocaine, a responsive verdict to the intent to distribute charge. The state filed a habitual offender bill and defendant was adjudicated a second felony offender. Defendant was sentenced tp eight years at hard labor without benefit.

Discussion

Sufficiency of the Evidence

Defendant asserts that the jury erred in finding him guilty of possession of cocaine based upon the testimony of a convicted felon/paid police informant.
An appellate court does not review facts except for due process under the standard set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The Jackson v. Virginia standard for appellate review of a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. State v. Ponsell, 33,543 (La.App.2d Cir.08/23/00), 766 So.2d 678, writ denied, 00-2726 (La.10/12/01), 799 So.2d 490.
La.R.S. 40:967(A) provides in part that it shall be unlawful for any person knowingly or intentionally:
|a(l) to produce, manufacture, distribute or dispense or possess with intent to produce, manufacture, distribute or dispense, a controlled dangerous substance or controlled substance analogue classified in Schedule II;
[[Image here]]
Cocaine is a schedule II controlled dangerous substance. La.R.S. 40:964, Schedule 11(A)(4).
The state’s case turns on the testimony of the Cl. The informant stated that he drove defendant to defendant’s cousin’s home and observed defendant get a bag of drugs from his cousin. The Cl then left with defendant, whose intent was to sell the drugs to a third person. The two were pulled over before the intended sale, the car was searched and a bag of crack cocaine was seized. The Cl stated that this was the same bag of cocaine that defendant had picked up from defendant’s cousin.
In an attempt to discredit the Cl’s testimony, the defense on cross-examination showed that this witness, the only link to defendant’s ownership and possession of the crack cocaine, was a paid police informant with a prior felony conviction for burglary. The Cl admitted that he was paid in this drug case ($100 or $120), as well as on “numerous” other occasions, was a former “crackhead” and, if he so desired, could obtain drugs. Det. Pass-man testified that he had coordinated the drug bust with the Cl on the date of defendant’s arrest.
Defendant claims that the testimony of the Cl and Det. Passman conflicted re *78 garding the number of telephone conversations they had that day and who initiated the calls. At least two telephone conversations between the Cl and the detective occurred. The first one was to notify Det. Passman that defendant was back into selling drugs and to set up a plan for 1 ¿defendant to sell to an undercover officer. Another phone call was made, and Det. Passman learned that the drugs had been obtained and that defendant was with the Cl in a particular car which would be traveling on a particular route. Whether this was the second or third call of the day and which party initiated this call was unclear. We cannot categorize this as a contradiction. Further, the record is replete with testimony from these two witnesses and other officers in which the details are consistent. The relevancy of the lack of clarity on the number of calls was for the jury to weigh.
Defendant also alleges contradictions in the testimony of Det. Passman regarding where the drugs were located when seized. Det. Passman testified that when he arrived at the scene, the Cl told him that defendant had thrown the drugs into the back seat. On cross-examination, the Cl admitted that he had not actually seen defendant throw the contraband into the back seat. In the initial arrest affidavit, the detective wrote by hand that the drugs were found behind the passenger seat. The typed investigation report states that the crack cocaine was lying on the rear left floorboard in plain view. The detective’s testimony at three different hearings, the preliminary examination, the motion to suppress and the trial, was that the drugs were found behind the driver’s seat on the floor board. When asked to explain, the officer replied, “Yeah, it (when he wrote that the drugs were behind the passenger’s seat) was just a mistake.”
Additionally, the arrest affidavit states that the Cl told Det. Passman that defendant “had just purchased the crack and had gotten into a maroon 15Grand Am driven by a(sic) unknown B/M.” At the preliminary examination, Det. Passman on cross-examination stated that the Cl did not mention the name of the driver. At the trial, however, the driver of the car was identified as the CL At trial, Det. Passman testified that the original plan was for defendant to sell to an undercover agent; had that occurred, the testimony of the Cl would not have been needed and the officer wanted to protect his identity.
Finally, defendant questioned the chain of custody of the drugs because the original plastic bag that contained the cocaine was not sent to the crime lab. Through rebuttal evidence, the state showed that the bag inadvertently remained in the police evidence room.
The jurors listened to and observed the witnesses’ testimony. Two other officers testified independently as to how they learned about defendant being in possession of drugs, how the stop was made and where the drugs were found. Testimony as to the time of day, the location, who was arrested, what was found at the scene and other details of the arrest was consistent. The evidence is clear that the officers were expecting to find defendant in possession of cocaine in a maroon car. The jury chose to believe the testimony of the Cl that the drugs had been obtained by and belonged to defendant, not him. Ambiguity caused by Detective Passman’s attempt to protect the identity of the Cl was for the jury to weigh as was the chain of evidence.
A reviewing court must defer to the trier of fact’s rational credibility calls. It is for the jury to weigh the evidence and the inference drawn | ^therefrom. State v. Mussall, 523 So.2d 1305 (La.1988); State *79 v. Jones, 36,553 (La.App.2d Cir.01/29/03), 840 So.2d 7. It is not the function of the appellate court to assess credibility or reweigh evidence. State v. Marcantel, 00-1629 (La.04/02/02), 815 So.2d 50. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Jackson, 33,837 (La.App.2d Cir.09/27/00), 768 So.2d 767, writ denied, 00-3078 (La.11/02/01), 800 So.2d 864.
In light of the above, we find no merit to this assignment of error.

Denial of Motion to Suppress

Defendant next argues that the initial stop was without probable cause and that the evidence seized from the car is therefore inadmissible.
Searches conducted without a warrant, that is without prior approval by a judge, are unreasonable under the Fourth Amendment except under a few specifically established and delineated exceptions. The Louisiana Supreme Court recently stated that the “automobile exception” sets forth two conditions that must be satisfied before a warrantless seizure of evidence from within a movable vehicle is authorized: (1) there must be probable cause to believe that the vehicle contains contraband or evidence of a crime; and (2) there must be exigent circumstances. State v. Thompson, 02-0333 (La.04/09/03), 842 So.2d 330. We note, however, the holding in Maryland v. Dyson, 527 U.S. 465, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999), in which the U.S. Supreme Court found that the |7automobile exception does not have a separate exigency requirement. In Dyson, the court reasoned that if a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment permits police to search the vehicle without more. Obviously, when dealing with a readily mobile vehicle, exigency always exists. In that respect the decisions in State v. Thompson and Dyson are reconcilable.
Whether information furnished by a confidential informant provides probable cause for an arrest or search depends on the “totality of the circumstances.” A court must consider, among other things, the informant’s veracity, facts relating to the informant’s basis of knowledge and corroboration of the informant’s information. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); State v. Raheem, 464 So.2d 293 (La.1985).
At the motion to suppress hearing, Det. Passman testified that he had used the Cl on numerous occasions. Specifically, information he has received from the Cl has directly led to nine felony drug arrests and has been instrumental in obtaining 35 felony drug arrests and search warrants. Det. Passman also testified that the information provided by the Cl has always been accurate and rehable.
After contacting him and telling him that defendant was trying to get back into the drug trade, the Cl kept Det. Passman abreast of the events as they unfolded. The Cl advised the detective that he was taking defendant to defendant’s cousin’s home to pick up the drugs; thereafter, they had the drugs and were traveling in a particular vehicle and direction. Det. Passman |swas dealing with a “tested” informant giving direct evidence of criminal conduct. Probable cause clearly existed to believe that the vehicle contained evidence of a crime and contraband.
Once probable cause has been established, the question of exigent circumstances presents no problem. Defendant was in a moving vehicle intent on disposing of the drugs he was carrying. The police were not able to timely set up a buyer and *80 had to react quickly. Thus, exigent circumstances existed.
Inasmuch as we have found probable cause and exigent circumstances rendering the search and seizure reasonable, we do not address the argument that something less than probable cause legitimated the stop and that the drugs were in plain view. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and progeny. Nor do we consider the issue of the Cl’s ■ consent to search the vehicle.

Contents of Record

In a pro se brief, defendant complains that the proceedings were not adequately transcribed, thereby preventing judicial review based on a complete record of the case.
La. Const, art. I, § 19 guarantees a defendant a right of appeal based upon a complete record of all the evidence upon which the judgment is based. While this court has reversed when material portions of the trial record are incomplete or unavailable, a slight inaccuracy in a record or an inconsequential omission from it which is immaterial to a proper determination of the appeal does not require reversal of a conviction.
13Our review of the record reveals a mistake in the transcript wherein the court reporter states that the jury returned a verdict of attempted possession of cocaine with intent to distribute. The court minutes reflect, however, that defendant was convicted of the lesser charge of possession of cocaine. The written jury verdict is not included in the record. Defendant was sentenced on the lesser crime. While this is a significant error in the transcription, the error is harmless and does not warrant reversing defendant’s conviction.
According to the reasoning set forth in State v. LaCaze, 99-0584 (La.01/25/02), 824 So.2d 1063, cert. denied, 537 U.S. 865, 123 S.Ct. 263, 154 L.Ed.2d 110 (2002), this record contains all significant parts of the proceedings and thus provides a basis for the full judicial review guaranteed to all defendants in Louisiana.
This assignment is without merit.

Conclusion

For the reasons set forth above, defendant’s conviction and sentence are AFFIRMED.