942 So.2d 646 (2006)
STATE of Louisiana, Appellee,
v.
Mark A. CHATTERSON, Appellant.
No. 41,4444-KA.
Court of Appeal of Louisiana, Second Circuit.
November 1, 2006.
*648 Louisiana Appellate Project by Carey J. Ellis III, for Appellant.
Don M. Burkett, District Attorney, Michael E. Daniel, Assistant District Attorney, for Appellee.
Before BROWN, STEWART and LOLLEY, JJ.
STEWART, J.
After his motion to suppress evidence was denied, the defendant, Mark A. Chatterson, entered a Crosby plea to possession of a Schedule II CDS, methadone, and possession of firearms by a convicted felon. He was sentenced to serve 5 years for possession of methadone and 15 years for possession of firearms by a convicted felon, to run consecutively. The defendant now appeals. Finding no merit in the issues raised on appeal, we affirm his convictions and sentences.

FACTS
The defendant was originally charged by bill of information with (count one) possession of a Schedule II controlled dangerous substance, methadone; (count two) possession of firearms by a convicted felon; (count three) cruelty to juveniles; and (count four) pornography involving juveniles. The defense filed a pretrial motion to suppress evidence seized from his home. A hearing on the motion to suppress was held, and the motion was subsequently denied.
The defendant then entered a guilty plea under State v. Crosby, 338 So.2d 584 (La. 1976), reserving his right to appellate review of the denial of the motion to suppress. He pled guilty to (count one) possession of a Schedule II CDS, methadone, and (count two) possession of firearms by a convicted felon. He received the agreed sentences of 5 years imprisonment at hard labor for possession of methadone and 15 years imprisonment at hard labor for possession of firearms by a convicted felon. The sentences were ordered to run consecutively. The state agreed to nol pros all other charges and not to file a multiple offender bill in this matter. The defendant now appeals the trial court's denial of his motion to suppress evidence.
On the evening of May 13, 2005, while caring for his daughter at his Logansport residence in DeSoto Parish, the defendant realized that he might have given her some of his medicine (methadone). After the child's mother, Leiloni Chatterson, and Stephanie Ward, a relative of the defendant, returned home from running errands, the child began having difficulty breathing and subsequently became unresponsive. A call to 911 was made shortly before midnight, and the child was subsequently airlifted to a Shreveport hospital for treatment.
When DeSoto Parish Sheriff's Deputy Phillip Daniels arrived at the scene, he found the child on the floor of the living room being attended by EMS personnel. Present were the defendant, Leiloni Chatterson, Stephanie Ward and Chestaline Lewis. At the request of EMS, Deputy Daniels left to set up a nearby landing zone for an emergency helicopter and returned shortly thereafter. When he returned, the child had been removed and the defendant and Leiloni had left for the hospital. Deputy Brett Cooper testified that when he joined Deputy Daniels at the *649 residence, only Ward and Lewis were present. Lewis, who is the child's grandmother, told both deputies that she lived in the residence, where she had her own room and paid some of the household bills.
While Deputy Cooper questioned Lewis and Ward, both he and Deputy Daniels noticed several pill bottles, a marijuana cigarette and a "roach" (a remnant of a burnt marijuana cigarette) clipped in a pair of hemostats on the computer desk in the living room in plain view. There was also a computer printout of an article regarding what to do in the event of a methadone overdose. It was pinned up in the living room in plain view. The deputies further observed several pornographic tapes on a low shelf where any child could get to them.
Deputy Cooper then asked Lewis if she had a problem with him looking around the house, and she replied that she did not.[1] Deputy Daniels was present and witnessed Lewis orally consent to the search. Deputy Cooper took two pill bottles from the living room. The two bottles looked exactly alike except one had the child's name on the label and the other had the defendant's name on the label and his initial, an "M," on top. Ward related that the defendant put the "M" on his bottle that night after he suspected that he had given the child the wrong medicine.
Ward informed Deputies Daniels and Cooper that there were some other pill bottles belonging to the child in the defendant's bedroom. The deputies entered the defendant's bedroom to look for the child's other pill bottles. They found pill bottles containing multiple roaches, marijuana cigarettes and a couple of baggies containing what looked like marijuana seeds. He also found pill bottles containing the child's name. While in the defendant's bedroom, Deputies Daniels and Cooper also observed three guns-a shotgun hanging over the bedroom door, and a .22 pistol and a .22 rifle on the shelf close to the bed. Deputy Cooper took all of the pill bottles and other drugs he recovered with him to the hospital so that the doctors could properly treat the child for the suspected overdose. These pills and drugs were later placed into evidence. A report from the North Louisiana Criminalistics Laboratory confirmed that one of these pill bottles contained methadone.
While Deputy Cooper was on his way to the hospital, Deputy Daniels radioed him the defendant's rap sheet, which included information that the defendant was currently on probation for a felony conviction of possession of methadone. Overnight, Deputy Cooper obtained a search warrant, which he executed at the residence early the next morning. Items seized pursuant to the search warrant included the three guns, a computer and CD's, pornographic materials, and a remote camera system which included a hidden camera in the bathroom.
After hearing the testimony of Deputies Daniels and Cooper, the trial court listened to arguments from both sides. It then denied the motion to suppress without giving any oral reasons.

DISCUSSION
Illegal Search and Seizure
The defense cites applicable law and argues that the defendant was subjected to an illegal search resulting in the seizure of evidence used to convict him of possession of methadone and possession of firearms *650 by a convicted felon. It contends that there was no search warrant for the items used against him and there was no valid exception to the warrant requirement that would render the evidence admissible. The defense notes that during the initial search, the deputies had no search warrant, no written consent to search, and observes that no mention of the oral consent to search was made in the reports. It also notes that the defendant was not at his residence during the initial search and did not give the police permission to search his home. The defense contends that since the child had already been taken from the home, no exigent circumstances existed to justify the officers' warrantless entry into his home. The defense argues that the officers should have obtained a search warrant. It concludes that the trial court should have suppressed the evidence, and therefore the conviction must be reversed and the case remanded for further proceedings.
The state argues that the evidence presented was clear and convincing that Lewis was a resident of the home, and as a cohabitant, gave a valid oral consent to search. It notes that the officers brought the drugs to the hospital to aid in the recovery of the child/victim. The state further notes that the firearms were retrieved pursuant to a valid search warrant, the validity of which has not been questioned on appeal. It concludes that the trial court's denial of the motion to suppress should be upheld.
The right of every person to be secure in his person, house, papers and effects, against unreasonable searches and seizures, is guaranteed by the Fourth Amendment to the U.S. Constitution and Article I, § 5 of the 1974 Louisiana Constitution. A search and seizure conducted without a warrant issued on probable cause is per se unreasonable unless the warrantless search and seizure can be justified by one of the narrowly drawn exceptions to the warrant requirement. State v. Thompson, 02-0333 (La.04/09/03), 842 So.2d 330; State v. Tatum, 466 So.2d 29 (La.1985); State v. Johnson, 40,847 (La. App.2d Cir.4/12/06), 926 So.2d 781; State v. Ledford, 40,318 (La.App.2d Cir.10/28/05), 914 So.2d 1168.
One of the exceptions to the warrant requirement is a search conducted pursuant to consent. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); State v. Strange, 04-0273 (La.05/14/04), 876 So.2d 39; State v. Wilson, 467 So.2d 503 (La.1985), cert. denied, 474 U.S. 911, 106 S.Ct. 281, 88 L.Ed.2d 246 (1985); State v. Johnson, supra; State v. Hudnall, 39,723 (La.App.2d Cir.05/11/05), 903 So.2d 605. Oral consent is valid. State v. Hudnall, supra; State v. Crews, 28,153 (La.App.2d Cir.05/08/96), 674 So.2d 1082.
The burden is on the state to prove that the consent was freely and voluntarily given. Id. Voluntariness is a question of fact to be determined by the trial court under the facts and circumstances of each case. This determination is to be given great weight on appeal because of the trial court's opportunity to observe witnesses and assess credibility. State v. Hudnall, supra; State v. Jennings, 39,543 (La.App.2d Cir.03/02/05), 895 So.2d 767, writ denied, 05-1239 (La.12/16/05), 917 So.2d 1107; State v. Paggett, 28,843 (La.App.2d Cir.12/11/96), 684 So.2d 1072.
Consent is valid when it is freely and voluntarily given by a person who possesses common authority or other sufficient relationship to the premises or effects sought to be inspected. United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); Frazier v. *651 Cupp, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969); State v. Bodley, 394 So.2d 584, 588 (La.1981); State v. Shumaker, 40,275 (La.App.2d Cir.10/28/05), 914 So.2d 1156; State v. Owens, 480 So.2d 826, 830 (La.App. 2d Cir.1985), writ denied, 486 So.2d 748, cert. denied, 479 U.S. 840, 107 S.Ct. 145, 93 L.Ed.2d 87 (1986).
This common authority stems not so much from one's property interest, "but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." United States v. Matlock, supra, 94 S.Ct. at 993, fn. 7. When the facts do not support a finding of actual authority, a search is reasonable within the meaning of the Fourth Amendment if the consent giver apparently has actual authority. Illinois v. Rodriguez, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990); State v. Shumaker, supra.
The plain view doctrine is also an exception to the warrant requirement. State v. Young, 39,546 (La.App.2d Cir.03/02/05), 895 So.2d 753; State v. Ray, 471 So.2d 831 (La.App. 2d Cir.1985), writ denied, 475 So.2d 364 (La.1985). The plain view doctrine renders a warrantless search and seizure of evidence reasonable: (1) if the police officer is lawfully in the place from which he views the object; (2) where the object's incriminating character is immediately apparent; and (3) the officer has a lawful right of access to the object. Horton v. California, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990); State v. Young, supra; State v. Nolen, 29,284 (La.App.2d Cir.04/04/97), 691 So.2d 379.
The state correctly notes, and the record confirms, that the firearms were seized pursuant to a search warrant. The validity of that warrant has not been questioned below or on appeal. The remaining issue is whether the methadone was seized pursuant to an exception to the search warrant requirement. A review of the record supports the trial court's denial of the motion to suppress with regards to the methadone. First, the facts support the finding that the methadone was in plain view when the deputies entered the residence in response to the 911 call. The plain view doctrine is an exception to the warrant requirement. See State v. Young, supra; State v. Ray, supra. The deputies' warrantless search and seizure of methadone was reasonable because the deputies were lawfully in the living room from which they viewed the methadone in response to the 911 call that the child had been overdosed with the defendant's methadone; the methadone's incriminating character was immediately apparent; and the deputies had a lawful right of access to the methadone under the circumstances surrounding the child's methadone overdose. See State v. Young, supra; State v. Nolen, supra. Second, the record clearly supports the finding that Lewis was a co-inhabitant who had the right to permit the inspection in her own right, and who freely and voluntarily consented to the search. See State v. Shumaker, supra. These arguments are meritless. Thus, this assignment is without merit.

CONCLUSION
For the foregoing reasons, we affirm the defendant's convictions and sentences.
AFFIRMED.
NOTES
[1] A written consent to search was obtained days later on May 17, 2005. On cross-examination, Deputy Cooper admitted that no mention was made of the oral consent to search in his reports.